Van Brunt, P. J.
The record upon which this appeal was argued contains none of the evidence and this appeal is based upon alleged errors contained in the conclusions of law of the referee,derived from the facts found by him. There being no evidence in the record, the only question which can be considered upon this appeal is: Does the report-show facts which are inconsistent with the conclusions of law, (Tomlinson v. Mayor, etc., 44 N. Y., 601), unless therefore the report shows affirmatively that the conclusions of law are erroneous, the judgment must stand.
It is claimed upon, the part of the plaintiff that under the-issues raised by the pleadings certain findings of the referee were improper. This question, however, cannot be considered because, notwithstanding the fact that such findings, might not be justified by the issues raised by the pleadings, the court is bound to assume that there was evidence to sustain such findings and that such evidence was admitted without objection. Whereupon it became the duty of the-referee to pass upon such evidence, notwithstanding it may have been contrary to the issues presented by the pleadings.
The facts found by the referee are in brief as follows:
That the plaintiff on the. 3d of May, 1816, entered into an argument with the defendants, who had associated themselves together and were doing business at a common office-in the city of New York under the name or style of the American Newspaper Union of co-operative newspapers as follows:

*237
New York' Newspaper Union.

Chicago Newspaper Union.

Milwaukee Newspaper Union.

Aikens Newspaper Union.

Southern Newspaper Union.

St. Paul Newspaper Union.

New York Office of the Lists of Co-operative Newspapers.
E. W. FOSTER, Special Agent,
148 and 150 Worth Street.
Office of the New York Newspaper Union, ) New York, May 3, 1876. j

Mr. Charles A. Clegg, New York:

Dear Sir—I will execute your orders to amount of $50,-000 (fifty thousand dollars) gross,fin the American Newspaper Union lists, subject to usual rules and regulations on •demand, for fourteen thousand dollars ($14,000) payable $1,000 down, $2,000 July 1st, next, and $1,000 monthly thereafter till paid, or at least as fast as the advertising •expires.
Orders in excess of $50,000 previous to April 1, 1877, will be taken at 25 per cent, of gross rates.
A. J. AIKENS,

President.

That disputes having arisen between the parties, the plaintiff on August 1, 1876, at the city of New York, ad-' dressed to the said Aikins the following communication, upon receipt of • which and on the same day the said Aikins indorsed thereon: “Accepted, August 1, 1876. A. J. Aikins, President.”
Charles A. Clegg, Advertising Agent, Tribune Building. Address P. O. Box 519.
New York, August 1, 1876.
A. J. Aikins, President American Newspaper Union, 148 and 150 Worth street, City:
Dear Sir—I hereby agree to carry out the contract for' $50,000 (gross) worth of space made with you in the American Newspaper Union lists May 3, 1876, by paying $1,000 cash, and giving my seven notes for the balance, payable $2,000 October 3, $1,000 November 2, and $1,000 December 2, in 1876; also $2,000 January 1, $1,000 February 3, $2,000 March 2, and $3,000 April 1st, in 1877, on your agreeing to carry out the following conditions, viz:
1st. It is understood that you have given me as low rates as you have to any New York advertiser, agent or agency, and should you give any one a lower rate during the continuance of this contract, you are to make this equally low.
2d. If I have not used up all of said space prior to April *238 1, 1877, then I am to be allowed to continue inserting advertisements until the space is all used, and should I require any additional space on orders taken before 1st April next, I am to have said extra space at twenty-five per cent of gross rates, by paying cash with each order.
3d. All of this $50,000 worth of space is to be charged at gross rates.
4th. You are not to receive any more advertisements from George W. Niles or his agents, or sell him any space.
5th. As there is a disagreement between us as to the contracts made in your and A. N. Kellogg’s lists prior to May 3d last, I am to retain the amount of $6,766.04 (for which you have rendered me bills), until the completion of the balance of said contracts, when Mr. Foster and myself are to write out a full statement of our respective claims,' and you agree to pass upon the same impartially. Should your decision not prove satisfactory to me, then it is mutually agreed to have the same adjusted by the courts. Hereafter, I am to pay you monthly on the balance of said contracts until they are completed.
Respectfully yours,
CHARLES A. CLEGG.
Sixth—That the plaintiff paid to the defendant Unions the sum of $13,000, mentioned in said communication of August 1st, 1876, and furnished to them numerous advertisements for insertion in the space so secured by him, and the-defendant Unions continued to receive ana publish such advertisements until on or about April 11, 1877. when they. stopped the publication of some of them.
Seventh. That one of the “usual rules and regulations referred to in the said communication of May 3, 1876, was a requirement by the defendant Unions, that all agents, who purchased space for the insertion of advertisements in the list of newspapers controlled by said Unions, and obtained from- advertisers advertisements to be so inserted, should charge and collect from such advertisers for such insertion the price or rate from time to time fixed by said Unions, and published by them for the information of the public and the guidance of such agents.
Eighth. That in no instance did the plaintiff after May 3, 1876, charge to or collect from the advertisers whose advertisements he secured and gave or offered to the defendant Unions for insertion in the space in said communication of May 3, 1876, mentioned, the price or rate at the time of securing the same fixed and published by said Unions, but on the contrary, in all instances, he charged and collected a lower price or rate. ■
'Ninth., That between August 1, 1876, and April 11, 1877, *239 the plaintiff made to the defendant Unions no monthly-payments on the balance of contracts mentioned in the clause marked “fifth” of said communication of August 1, 1877. '
Tenth. That the obligation of the plaintiff to adhere to such published rates and to make such monthly payments was not at any time excused or waived by the-defendant Unions.
Upon these facts the referee found as conclusions of law that the communications of May 3 and August 1, 1876, constituted a valid contract between the plaintiff upon the one side, and the defendants jointly and severally on the other side, and
That in and by said contract, the plaintiff undertook and agreed, in obtaining and furnishing to the defendant Unions advertisements for insertion in their lists, to obey and conform to their usual rules and regulations, one of which was that all agents should charge to advertisers the prices or rates from time to time fixed and published by said Unions, and undertook and agreed to make to the defendant Unions monthly payments on balances of contracts made by him prior to May 3, 1876. That the performance of such undertakings and agreements, and each of them, on the part of the plaintiff, was a condition precedent to performance by said Unions of said contract on their part, and that the plaintiff failed to perform either of said conditions, and dismissed the plaintiff’s complaint.
It is urged upon the part of the appellants that the conclusion of the referee is erroneous, because it is not stated for what reason the defendants stopped the advertisements, and because it does not appear that the plaintiff was ever informed of the rules and regulations of the defendants or ever heard of them, or that the plaintiff’s misconduct had anything to do with the violation of them by the defendant, nor does it appear that the defendants ever sustained any damage by reason of any disregard of them, and because it does not appear how much lower the plaintiff charged for the advertisements which he procured and asked to be inserted, than the rates fixed by the rules and regulations of the defendants.
_ It is to be observed, upon the- consideration of these questions, that the plaintiff claimed the money which had been paid by him to the defendant upon the ground of a breach of the agreement made by the defendants with himself in respect of this advertising. It has been found by the referee, and we must assume that it was found upon competent proof and that such proof was properly received, that one of the usual rules and regulations referred to in the communication of May third was a requirement that *240 all agents who purchased space for the insertion of advertisements in the lists of newspapers controlled by said-unions, and obtained from advertisers advertisements to be so inserted, should charge and collect from such advertisers for such insertion the price or iate from time to time fixed by said unions, and published by them for the in- ■ formation of the public and the guidance of such agents.
The plaintiff having contracted in view of such rules and regulations, it is entirely immaterial whether he ever heard of them or was informed as to the character of such rules and regulations. He was bound to acquaint himself with their particulars in view of the fact that he contracted to be guided by them; and if they existed, and he was in-, informed of them, there was no evidence but that it was because of his own negligence. The terms of the contract were explicit that it was made subject to the rules and regulations. The findings of the referee is that such rules and regulations existed, and the finding states what such rules and regulations were. ’
The referee then goes on and finds that in no instance, from the time of the inception of this contract, did the plaintiff comply with the rules and regulations,but in every instance in which he tendered advertisements to the defendants for insertion, he violated those rules. Now, it is entirely immaterial whether these rules were just, or whether they were proper, or for what purpose they were adopted. The parties had contracted to be guided by them in reference to the subject matter of this contract, and they could not be arbitrarily set aside by the will of either party. The defendants had agreed to do certain advertising when procured according to these rules and regulations.
The finding of the referee was that the plaintiff never had procured any advertisements according to these rules or tendered the same to the defendant for insertion. It is true that the defendant did do a considerable amount of advertising for the plaintiff under the contract. - But it is also found by the referee that the obligation of the plaintiff to adhere to the published rates of the defendants, according to the rules and regulations, was never waived or excused by the defendants.
Under these circumstances, when advertisements were tendered to them which had been procured in violation of the rules and regulations of the defendants, they were justified in refusing to insert such advertisments or to continue the same. The plaintiff having contracted to be governed by these rules and regulations, was bound by his contract, and he could not put the defendants in the wrong and claim that they had been guilty of a breach of their contract by asking them to take advertisements which had been pro *241 cured by him in direct violation of the obligations of his contract. The defendants were not bound in any way to accept the orders which had been obtained in violation of the contract and their refusal to accept such orders, as already stated, was no violation of the contract, and until the defendants have violated their contract the plaintiff is in no condition to recover damages therefor.
It is not necessary to discuss here the fact that it does not appear how much lower than the rates fixed by the rules, the plaintiff procured advertisements which he tendered to the defendants for insertion, because if the plaintiff is to claim that the difference was not substantial, in order that he may reverse the finding of the referee it was necessary that he should show such fact by the evidence, every presumption being in favor of the correctness of the judgment, and no presumptions will be indulged in for the purpose of its reversal. Even, however, if the variations were slight, they would have justified the finding of the referee from the fact, if the fact was true, that in no case did he comply with the rules and regulations which were to govern this question of rates. The contract was reasonably clear and explicit upon this point. The plaintiff was to send in from time to time advertisements to the defendants to be published in the space purchased by him. As to each of these orders their publication by the defendants was subject to the usual rules and regulations and it appearing what those rules and 'regulations were, no order taken by the plaintiff in violation of those rules was entitled to insertion. As has been already stated, both by the learned referee, and also in this opinion, it is not necessary to consider here what the legal position of the parties with reference to the contract as a whole would have been, had the plaintiff occasionally taken an order at less than the usual rates, and the defendants had refused to accept any others thereafter, though taken at the proper rate, inasmuch as every order given by the plaintiff was taken by him at less than the card rates.
Under such circumstances there seems to have been a direct violation by him of his part of the contract and the refusal of the defendants to accept such advertisements can form no basis, whatever, for claiming that the defendants have failed to comply with their part of the agreement.
It is urged that it is a great hardship that these defendants should retain the money of the plaintiff without performing any services therefor. If they are enabled so to retain this money it is simply because the plaintiff has per *242 sistently violated his contract and refused to comply with its conditions.
Under these circumstances it is difficult to see how it is. possible for the plaintiff to claim damages of the defendants when there is no evidence that they have failed to comply with their obligations as contained in the corn-tract.
The only other question to be considered is the question in regard to costs. This question was considered apparently with great care by the court below, and the allowance of the different bills of costs seems to have been justified by the peculiar facts of the case and the court should not interfere with the result arrived at.
The judgment and orders appealed from should be affirmed, with costs.
Brady and Daniels, JJ., concur. ■